UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ROBERT KINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:09-CV-008-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Robert Kinney seeks judicial review of a decision of the Defendant Commissioner of Social Security in which his applications for Disability Insurance Benefits and Supplemental Security Income were denied. The court has reviewed the parties' pleadings, the administrative record, and the applicable law and recommends that the United States District Court reverse the Commissioner's decision and remand Kinney's case for further administrative proceedings.

**I.   Judicial Review**

The court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence from the record as a whole and whether the Commissioner applied the proper legal standards in reaching his decision. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). "Substantial evidence" is such relevant evidence -- more than a scintilla and less than a preponderance -- that a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations and quotations omitted).

**II.     Statement of the Case**

Kinney quit working as a chrome plater in June 1999 after he suffered a tear to the rotator cuff of his left shoulder at work while lifting heavy equipment. (Tr. 87, 278, 487.) He underwent surgery on his shoulder in August 1999 but continued to complain of symptoms. (Tr. 197, 278-279.) Thereafter, he complained of pain in his cervical spine, and an MRI on February 13, 2003, almost three years after Kinney underwent surgery on his shoulder, showed significant degenerative changes and, specifically, severe spinal stenosis at multiple levels of his cervical spine. (Tr. 281-82, 443.) Kinney underwent surgery to address the problems in his neck one week prior to a hearing the Administrative Law Judge (ALJ) held on November 13, 2007. (Tr. 267, 373, 455, 500, 504.)

The hearing on November 13, 2007, was Kinney's second hearing before the ALJ. After the first hearing on September 13, 2006, the ALJ determined that Kinney retained the Residual Functional Capacity (RFC) to perform sedentary work that did not involve overhead reaching with his left arm and that Kinney was not disabled because there were a significant number of jobs in the national economy that he could perform. (Tr. 31-38, 482-98.) Kinney appealed the ALJ's decision, and the Appeals Council remanded the case to the ALJ for further proceedings. (Tr. 72-74.) On remand and after the second hearing, the ALJ reached the same determination – that Kinney retained the RFC to perform sedentary work that did not involve overhead reaching with his left arm and that Kinney was not disabled because there were a significant number of jobs in the national economy that he could perform. (Tr. 17-25.)

Kinney argues the ALJ's decision should be reversed because the ALJ did not properly consider and accord adequate weight to opinions from Piyush Mittal, M.D. Kinney contends that Dr. Mittal's statement regarding Kinney's functional abilities and physical limitations was the most

2

comprehensive statement from a physician in the administrative record. He further argues that although the ALJ mentioned the examination report from Dr. Mittal, he failed to adequately consider it, and he argues that the opinions in Dr. Mittal's examination report support his claim for disability and demonstrate that he is unable to engage in competitive employment.

## III.   Discussion

On August 20, 2007, after the first hearing and before the second hearing on November 13, 2007, Dr. Mittal examined Kinney and completed a standardized government form entitled "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (Tr. 383-91.) Dr. Mittal reported that Kinney exhibited decreased range of motion and joint tenderness in his left shoulder; painful range of motion in his right shoulder; and decreased range of motion in his neck and in his back. (Tr. 384.) In regard to Kinney's functional abilities, Dr. Mittal indicated that Kinney was capable of frequently lifting and carrying up to ten pounds but that he was limited in his ability to reach overhead. (Tr. 384, 386.) He also indicated that Kinney was capable of sitting for thirty minutes without interruption; standing for thirty minutes without interruption; and walking for thirty minutes without interruption. (Tr. 387.) On the other hand, he indicated that Kinney was capable of sitting only two hours in an eight-hour day, standing only one hour in an eight-hour day, and walking only one hour in an eight-hour day. (*Id*.) Kinney argues these limitations preclude him from performing the requirements of work. The Commissioner argues that Dr. Mittal's assessment was merely a restatement of Kinney's subjective report.

Dr. Mittal's assessment regarding Kinney's abilities to sit, stand, and walk does, in fact, appear to be a restatement of Kinney's subjective report during the examination. (*Compare* Tr. 384 & 387.) However, Dr. Mittal's assessment of Kinney's ability to perform the physical requirements

3

of work is the only comprehensive assessment in the record, and Dr. Mittal's assessment, specifically, of Kinney's ability to stand and walk is supported by examination notes from Dwight D. Hood, M.D., who also examined Kinney after the first hearing and indicated in his opinion that, in regard to Kinney's ability to do work-related activities, prolonged standing and "moving about" during the workday would be difficult for Kinney. (Tr. 437.)

On the other hand, the administrative record contains no evidence, other than Dr. Mittal's opinion, regarding Kinney's ability to engage in the sitting requirements of sedentary work. Sedentary work is performed primarily in the seated position. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2009). Thus, whether Kinney is capable of sitting for extended periods of time is relevant, and there must be substantial evidence in the record showing that Kinney is capable of sitting for most of the part of an eight-hour day. *See id.*; *see also* S.S.R. 96-9P, 1996 WL 374185 at * 1 (acknowledging that RFC represents the individual's ability to perform work eight hours per day for five days per week). Such evidence is not cited by the ALJ, and such evidence, other than that provided by Dr. Mitral, is not in the record.

Whether Kinney was capable of sitting for no more than thirty minutes, as determined by Dr. Mittal, is critical in this case. Dr. Mittal did not state that Kinney could work if he alternated between sitting and standing, and the ALJ did not include in the RFC determination a sit/stand option, and he did not cite evidence to support his determination that Kinney could perform the physical requirements of sedentary work, which would require Kinney to sit most of the workday. (Tr. 17-25). The ALJ provided a summary of the medical records, including the records developed after the first hearing that showed Kinney suffered from severe spinal stenosis and underwent surgery for the same, but he did not cite to evidence upon which he based the RFC determination.

4

(*Id*.)

The ALJ need not adhere to strict articulation requirements, but he must give reasons for his decision and support his decision with evidence. *Falco v. Shalala*, 27 F.3d 160,164 (5th Cir. 1994) (citation omitted). Bare conclusions are beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The ALJ must discuss the evidence in the record and explain why he reached the decision he reached. *See id*.

This was not done in this case.

**IV.    Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Kinney's case to the Social Security Administration for further administrative proceedings.

**V.     Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are

accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated:    August 28, 2009.

                                              _____
                                              NANCY M. KOENIG
                                              United States Magistrate Judge